UNITED STATES of America, Appellee,

v.

Herbert BREGER, Appellant.

No. 662, Docket 79–1395.

United States Court of Appeals,
Second Circuit.

Argued Jan. 22, 1980.

Decided Feb. 28, 1980.

Certiorari Denied April 28, 1980.
See 100 S.Ct. 1855.

---

Murray Appleman, New York City, for appellant.

Rhonda C. Fields, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., E. D. N. Y., Vivian Shevitz, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for appellee.

Before OAKES, VAN GRAAFEILAND and NEWMAN, Circuit Judges.

PER CURIAM:

This appeal is from convictions after a jury trial in the United States District Court for the Eastern District of New York, George C. Pratt, Judge, for three counts of tax evasion, in violation of I.R.C. § 7201, for the years 1972, 1973, and 1974, and three counts of false statements in tax returns, for the same years, in violation of I.R.C. § 7206(1). We affirm.

 Appellant makes two principal arguments on appeal. He first contends that a motion for directed verdict should have been granted, because the excess funds revealed by the expenditure method of proof resulted not from record and tape sales but from repayment of loans. His supporting evidence at trial consisted primarily of testimony from his brother-in-law, father-in-law, and a close family friend, to the effect that they repaid Breger certain cash during the tax years in question. Appellant also claims that he was not a principal but mere-

ly an agent for other dealers in the sale of records and tapes. But the Government's proof consisted of invoices in appellant's name and cancelled checks made out to appellant from three record companies for over $90,000. And the testimony as to the cash "repayments" was totally unsubstantiated by any documentation such as books, records, notes, receipts, or the like. We think that these are precisely the sort of factual issues designed for submission to a jury, see *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Marrapese*, 486 F.2d 918, 921 (2d Cir. 1973), cert. denied, 415 U.S. 994, 94 S.Ct. 1597, 39 L.Ed.2d 891 (1974), which in this case apparently did not accept appellant's version of the story. In any event, even assuming appellant were correct as to each of the alleged repayments, he still substantially understated his taxable income—by more than $17,000.[1]

 Appellant's other principal argument attacks the reliability of the Government's opening net worth evaluation. The net worth/expenditure method for proving tax evasion necessitates the establishment with reasonable certainty of a starting point. *Holland v. United States*, 348 U.S. 121, 132, 75 S.Ct. 127, 133, 99 L.Ed. 150 (1954); *McFee v. United States*, 206 F.2d 872, 874 (9th Cir. 1953), *vacated and remanded*, 348 U.S. 905, 75 S.Ct. 311, 99 L.Ed. 710, *aff'd upon reconsideration per curiam*, 221 F.2d 807 (5th Cir.), cert. denied, 350 U.S. 825, 76 S.Ct. 53, 100 L.Ed. 737 (1955) (expenditure and net worth methods of proof in tax evasion cases are essentially same method). The Government must affirmatively prove an initial amount available to the taxpayer, with evidence that excludes the possibility that the defendant relied on previously accumulated assets rather than unreported taxable income, *United States v. Marshall*, 557 F.2d 527, 530

---

1. The argument that the Government did not investigate the repayments under the "leads" doctrine, *see Holland v. United States*, 348 U.S. 121, 135–136, 75 S.Ct. 127, 135, 99 L.Ed. 150 (1954), is without substance. Even if the doctrine were applicable the evidence was sufficient to convict. But appellant had not advised the Government of the supposed cash receipts, his close friend had not done so when interviewed, and their joint attorney never produced the supposed documentation—stock purchase orders—underlying the "loan" and "repayment." In other words there were not "leads" to follow, only afterthoughts.

(5th Cir. 1977), without refuting all possible speculation as to sources of funds, however. *McFee v. United States, supra*, 206 F.2d at 874. We think the Government met its burden here. It used information gleaned from a 1969 mortgage application, traced a real estate and cash inheritance from appellant's mother in 1968, and investigated bond statements and checking accounts in order to ascertain appellant's access to funds as of January 1, 1972. We note that appellant adduced no specific evidence, such as a cash hoard, to suggest that the starting point was inaccurate or misleading.

Appellant's other contentions are without merit and require no comment.